David W. Affeld, Cal. Bar No. 123922
    dwa@agzlaw.com
Damion D. D. Robinson, Cal. Bar No. 262573
    dr@agzlaw.com
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel.(310) 979-8700
Fax(310) 979-8701

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY; | **Case No.: 2:21-cv-05103-AB (AGR)** |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT; BREACH OF FIDUCIARY DUTIES; BREACH OF WRITTEN CONTRACT; BREACH OF IMPLIED COVENANT; BREACH OF CONTRACT; ACCOUNTING** |
| vs. | |
| TYLER C. BURGE; THE ALONZO CHURCH PUBLICATION PROJECT; MIT PRESS; MASSACHUSETTS INSTITUTE OF TECHNOLOGY; and DOES 1 through 20, inclusive; | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Michael Zeleny ("Plaintiff" or "Zeleny") alleges for his First Amended Complaint against defendants Tyler C. Burge ("Burge"), the Alonzo Church Publication Project (the "Church Project"), MIT Press, and Massachusetts Institute of Technology ("MIT"; collectively with Burge, the Church Project, MIT Press, and Does 1 through 20, "Defendants"), as follows:

## INTRODUCTION

1.      Zeleny is a literary executor of Alonzo Church ("Church"), one of

the forefathers of modern computer science.[1]

2.     Over nearly a decade before and after Church's death in 1995, Zeleny worked extensively to prepare a collection of Church's written works for publication, along with a comprehensive bibliography and a computer typescripting code to render Church's works (including extensive formulae, figures, and notations) into printed form.  This work was known as the "Collected Works."  Zeleny holds a registered copyright in this collection under the title "Collected Works in Mathematics, Logic, and Philosophy by Alonzo Church."  Zeleny is the sole owner of the copyright.

3.     The "Collected Works" was a labor of love.  Zeleny considered it his duty as Church's executor to foster and preserve Church's academic and literary legacy, and to ensure that Church's works were published according to the highest academic standards.

4.     In 2005, Zeleny learned that Church's other two literary executors, Burge and Herbert B. Enderton ("Enderton"),[2] intended to publish an incomplete version of the "Collected Works," generated from the "Collected Works" that Zeleny had prepared.  Zeleny objected to the publication of the incomplete, hastily-prepared materials.  No publication occurred at that time.

5.     Instead, in April 2019, Zeleny learned that Burge had published an incomplete version of the Collected Works with MIT Press without Zeleny's knowledge or consent.  The incomplete publication is based in large part on Zeleny's collection of Church's works and associated bibliography, including copying and incorporating the typescript code that Zeleny developed for the Collected Works.  Although Burge previously credited Zeleny as an editor of the Collected Works, he removed Zeleny's credit from the published version.

---

[1] Church is perhaps most well known for the Church-Turing thesis or "Church's thesis," developed with Alan Turing in the early 20th Century.

[2] Enderton has since passed away.

FIRST AMENDED COMPLAINT

6.     Zeleny brings this action for copyright infringement based on the wrongful use of his collection of Church's works, including the typescripting code, and associated bibliography.  He also brings claims against Burge and MIT for breach of contracts relating to the publication of the Collected Works.  Finally, he brings a claim against Burge, individually, for violation of Burge's partnership duties in connection with the Church Project.

## PARTIES

7.     Zeleny is an individual and resident of Los Angeles, California. He is a literary executor of Church and a partner of the Church Project.

8.     On information and belief, Burge is an individual and resident of Los Angeles, California.  Burge is a literary executor of Church and a partner of the Church Project.

9.     The Church Project is a general partnership with its principal place of business in Los Angeles, California.  The partners of the Church Project are Zeleny and Burge, and included Enderton prior to his death.

10.     On information and belief, MIT Press is an unincorporated association and a non-profit subsidiary of MIT with its principal place of business in Cambridge, Massachusetts.  On information and belief, MIT Press is a division of MIT.

11.     On information and belief, MIT is a non-profit, private university located in Cambridge, Massachusetts.

12.     On information and belief, Does 1 through 20, inclusive, are in some manner legally responsible for the acts, omissions, and damages alleged herein, including, without limitation, by publishing and/or distributing the Collected Works in violation of Zeleny's copyright.  Zeleny is unaware of the true names and capacities of Does 1 through 20, and so names them under these fictitious names.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction under 28 U.S.C. §

1338(a) because Zeleny's claim for copyright infringement arises under the federal Copyright Act, 17 U.S.C. § 101, *et seq.*

14.     Venue is proper in this district under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to Zeleny's claims occurred in Los Angeles, California in the Central District of California.  Venue is also proper under 28 U.S.C. § 1400(b) in that defendants Burge and the Church Project committed acts of copyright infringement within this district and had a regular and established place of business in this district.

## GENERAL ALLEGATIONS

15.     Zeleny is the holder of exclusive rights under the Copyright Act to reproduce, distribute, display, prepare derivative works from, and license the portion of the "Collected Works" that he created, which is the subject matter of this action. He does not claim any rights in Church's underlying original works, which were created by Church.

### *Zeleny Becomes Church's Literary Executor*

16.     In 1987 and 1988, Zeleny was a philosophy student at UCLA and developed an interest in Church's work.  He studied under Church for two years before leaving to pursue studies at Harvard College.

17.     In 1990, Zeleny learned that the UCLA Philosophy Department had voted to discontinue Church's tenure.  He attempted, unsuccessfully to petition for Church's reinstatement.  He then re-enrolled at UCLA to study under Church for the last year of Church's tenure.

18.     During his studies, Zeleny asked Church about the status of his unpublished works.  Church informed Zeleny that his works were destined for eventual publication as part of his "Collected Works" under the supervision of his literary executors Burge and Enderton, but would likely be published posthumously. Burge and Enderton confirmed that the "Collected Works" project had been put on hold due to a lack of manpower and publisher interest.

FIRST AMENDED COMPLAINT

19.     At that time, effectively no work had been done on Church's "Collected Works."  Church's works had not been selected for inclusion nor arranged.  None of the code necessary to render Church's works into printable text had been written.

20.     Zeleny volunteered to assist Church, Burge, and Enderton in reviving the project.  Church agreed to make Zeleny his third literary executor.  He gave Zeleny access to his unpublished works, and encouraged Zeleny to edit and collate them into a comprehensive and definitive collection along with his published works.

### *Zeleny Prepares the "Collected Works" from 1991 through 1998*

21.     Between 1991 and 1998, Zeleny worked tirelessly on preparing the "Collected Works."  Neither Burge nor Enderton contributed meaningfully to this project, nor did they provide creative content for inclusion.

22.     Zeleny prepared a comprehensive bibliography of Church's collected works.  He also reviewed Church's extensive published and unpublished materials, and selected those works that he concluded were appropriate for publication and academically significant for inclusion in the Collected Works. Zeleny selected those of Church's unpublished works that he believed had equivalent academic rigor to Church's published papers.

23.     Zeleny also prepared the typescript computer code necessary to render Church's works in print.  This code included the computer code necessary to render the text and extensive formulae and figures in printed form, and also included styles, arrangements, and formatting for Church's work, such that they would be readily understood.  In the process of creating this code, Zeleny made numerous stylistic choices and selection of visual elements to be rendered by the code, such as slope and weighting of type, use of differing styles and widths of type, and selections of punctuation to portray Church's work.  Zeleny also incorporated a number of editorial decisions into the code to remain true to Church's original work by

incorporating textual and symbolic conventions to closely replicate Church's handwritten texts.[3]

24.     Finally, Zeleny arranged for his friend Colin McLarty, then chairman of the Philosophy Department of Case Western Reserve University, to interview Church in a retirement community in Hudson, Ohio.

25.     Zeleny's work reinvigorated Church's interest in the project.  As Church's son, Alonzo Church, Jr., commented at the time, the project "would not have [his] father's support without [Zeleny's] association with it."

26.     During this time, Zeleny also researched and composed the first complete bibliography of Church's published works, unpublished manuscripts, and reviews.

27.     In mid-1995, Burge, Enderton, and Zeleny presented sample chapters of the "Collected Works" to MIT press, along with proposed publication contract terms, and a submission timeline.  In anticipation of presentation of these sample chapters to MIT, Zeleny delivered to Burge his current version of the Collected Works, including the underlying typescript code.  From 1995 through 1998, Burge negotiated the terms of publication of the "Collected Works" and Selected Works of Alonzo Church with MIT Press on behalf of himself, Enderton, and Zeleny.

28.     Burge, Enderton, and Zeleny agreed that they would share equal billing as editors of the "Collected Works", and would share the royalties equally consistent with their status as co-literary executors of Church.  At no point did Zeleny assign or contribute the Collected Works, bibliography, or typescript code to Burge,

---

[3] As a minor example, in his handwritten work, Church used both in-line ellipse (*i.e.* ⋯) and base-line ellipses (*i.e.*, …).  Zeleny determined that in order to retain the original import of Church's works, these should be treated as different symbols.  He incorporated the differing versions into his code.  In the version of the Collected Works published by Burge and MIT/MIT Press, Burge acknowledges the same in his editor's note, indicating (in passive voice) that "it was decided that since Church used centered dots sometimes in his own handwriting, these two forms of ellipses should be treated as different symbols."  This was decided *by Zeleny* in developing his code.

1  Enderton, or the Church Project.

2       29.    MIT through MIT Press entered into a Letter of Agreement with

3  Zeleny, Burge, and Enderton dated as of June 21, 1996 for publication of the

4  Collected Works.  This agreement provided in substance that MIT would pay

5  royalties in the amount of 8% on the first 1,500 copies of the Collected Works; 10%

6  on the next 1,500 copies; and 12% on any additional copies.

7              *Zeleny Delivers the Collected Works to Burge.*

8       30.    By mid-1998, Zeleny reported to Burge and Enderton that he had

9  completed over 1,100 pages of the "Collected Works" typescript, including all of

10 Church's published research papers, two versions of Church's famous book

11 *Introduction to Mathematical Logic*, and approximately 25% of his reviews.

12 Zeleny's selection of materials for inclusion in the Collected Works was based on his

13 determination of those of Church's works that were significant and rigorous enough

14 from an academic perspective to warrant inclusion.  Zeleny excluded from the

15 collection those materials that he deemed not suitable for inclusion.

16      31.    At that time, Zeleny delivered to Burge and Enderton the then-

17 current version of the Collected Works that he had created, described above.  He

18 provided them the complete typescript computer code necessary to render the full set

19 of Collected Works in printed format, including all of the styles, arrangements,

20 formatting, and conventions that he had incorporated, along with his bibliography.

21 This represented near completion of the "Collected Works."  Zeleny anticipated

22 completion of the few remaining materials in three to four months.

23      32.    On June 14, 1995, Church's 92nd birthday, Zeleny presented

24 Church the partially completed transcripts of his collected works.  Church died two

25 months later on August 11, 1995.

26           *Zeleny is Blocked from Completing the "Collected Works"*

27      33.    In June of 1998, Zeleny, Burge, and Enderton sought permission

28 from Church's surviving children to access his personal archive to complete the

"Collected Works."  Church's heirs agreed to allow Burge and others to access certain of Church's archives, but would not allow such access to Zeleny.

34.    The efforts to develop the Collected Works stalled.  Zeleny believed that it was his primary duty as Church's literary executor to see to it that Church's works were properly preserved and studied.  He refused to give up his efforts to properly study the archive of Church's works.

35.    The efforts to publish the "Collected Works" stalled.  In 1999 and 2000, Zeleny offered to make a substantial financial contribution to complete the project, and urged Burge and Enderton to decide whether to go forward with publication.  They declined to move forward with the project.

36.    In 2005, Zeleny wrote to Burge and Enderton through counsel, urging them to resolve the issues relating to the project and to move forward with developing the "Collected Works."  Zeleny again offered to pursue the project himself if Burge and Enderton were no longer interested.

**_Burge and Enderton Attempt to Publish the "Collected Works" Over Zeleny's Objection._**

37.    In mid-2005, Burge informed Zeleny that he planned to publish an incomplete, non-definitive version of the "Collected Works."

38.    Zeleny immediately objected that the hasty publication of an incomplete version of the "Collected Works" would be academically deficient and contrary to the duties of Burge, Enderton, and Zeleny for the stewardship of Church's literary legacy.  Zeleny insisted that a definitive collection of Church's works be completed with appropriate annotations and references to variant readings.

39.    Burge responded, stating that he and Enderton intended to publish the incomplete "Collected Works" despite Zeleny's objection.

40.    Discussions continued into early 2006, but MIT Press did not publish the "Collected Works."

### *Defendants Publish and Distribute the "Collected Works"*

41.    On April 29, 2019, Zeleny learned that Burge and MIT Press had published the incomplete version of the "Collected Works."  The publication is substantially derived from Zeleny's bibliography, typesetting, and compilation of Church's works prepared between 1991 and 1998.

42.    Burge and MIT Press did not notify Zeleny of their intention to publish the "Collected Works," or seek Zeleny's consent to publish his portion of the "Collected Works."  They did so over Zeleny's expressed objection with notice that he did not consent to the publication.

43.    Adding insult to injury, Burge and MIT Press removed Zeleny as an editor from the published version of the "Collected Works," and failed to credit his contribution.  Neither MIT/MIT Press nor Burge paid Zeleny any royalties.

44.    Instead, Zeleny has learned through this action that Burge and Enderton purportedly entered into a subsequent Letter of Agreement, dated as of June 25, 2008 (the "2008 Agreement"), to publish the Collected Works without Zeleny's involvement.  This subsequent agreement explicitly provides that Burge and Enderton "will make, and will bear sole and complete responsibility for making, any payments to any other contributors or persons claiming to be contributors to the Work … **including, without limitation, Michael Zeleny**."  Burge and Enderton also agreed to give proper attribution to Zeleny.[4]

45.    On June 19, 2021 Zeleny emailed Burge with an inquiry of the royalties Burge received from the MIT Press for publishing "Collected Works." To date, Burge failed to respond to Zeleny's email.

### *The Published Work Infringes Zeleny's Copyright.*

46.    The version of the Collected Works published by MIT/MIT Press

---

[4] Zeleny disputes that the 2008 Agreement was a valid license of any rights in the Collected Works because neither Burge nor Enderton are joint authors or co-owners of Zeleny's work as those terms are defined by law.

and Burge copies substantial, protected elements of Zeleny's Collected Works, which Zeleny delivered to Burge and Enderton, as described above.

47. Defendants copied Zeleny's typescript code. That code is copied, incorporated, and embodied (with minor corrections) in each of the chapters of the published version of the Collected Works that overlap with the version Zeleny prepared and provided to Burge and Enderton, including each article, review, and book shared between the two versions. This includes the use and copying of the creative content embodied in the code by Zeleny, including styles and arrangements of formulae, figures, and text, textual and symbolic conventions selected by Zeleny and incorporated in the code and resulting work, and the unique styling that Zeleny selected and applied to the text in writing the code.

48. Defendants' published version of the Collected Works also copies a core of Zeleny's selections of Church's works contained in Zeleny's compilation. The published version includes a similar selection of articles, reviews, and books, which was based substantially on the core of texts selected and arranged by Zeleny in the Collected Works delivered to Burge and Enderton.

49. Defendants have also distributed Zeleny's copyrighted work, as embodied in the typescript code, selection of materials, and resulting printed book by selling and distributing copies of the same.

50. Defendants have created a derivative work from Zeleny's by adapting Zeleny's collection of works and typescript code into the published version of the Collected Works, using his bibliography in the process, and using Zeleny's selections of Church's works as the basis for the published version. The published version of the Collected Works is a derivative work of Zeleny's copyrighted work.

## FIRST CLAIM

## COPYRIGHT INFRINGEMENT

### (By Zeleny Against All Defendants)

51. Zeleny incorporates by reference each of the preceding paragraphs

1  as though fully set forth herein.

2         52.    Zeleny owns the copyright in his version of the "Collected
3  Works," including the collection of works, typescript code, and associated
4  bibliography.  Zeleny owns a copyright registration in the work entitled "Collected
5  Works in Mathematics, Logic, and Philosophy by Alonzo Church," consisting of a
6  compilation of articles.  Zeleny has a registered copyright in connection with the
7  Collected Works.

8         53.    Defendants infringed Zeleny's copyright by reproducing, copying,
9  publishing, distributing, and preparing derivative works from the Collected Works.
10 The published version of the Collected Works is substantially and preponderately
11 derived from Zeleny's work, as alleged herein, without Zeleny's consent.  Defendants
12 reproduced Zeleny's copyrighted work in copies, prepared derivative works based on
13 Zeleny's copyrighted work, and distributed copies of the same to the public.

14        54.    Defendants' infringement of Zeleny's copyright was willful in
15 that Defendants had prior notice that Zeleny did not consent to the publication and
16 affirmatively objected thereto.

17 <u>**SECOND CLAIM**</u>
18 **BREACH OF FIDUCIARY DUTIES**
19 **(By Zeleny Against Burge)**

20        55.    Zeleny incorporates by reference each of the preceding paragraphs
21 as though fully set forth herein.

22        56.    Burge and Zeleny are partners in the Church Project and, thus,
23 Burge owes Zeleny fiduciary duties of care, loyalty, candor, and good faith.

24        57.    Burge breached his fiduciary duties to Zeleny by, among other
25 things, publishing the Collected Works without Zeleny's consent and without
26 disclosing the contemplated publication or sharing in the proceeds with his partner,
27 Zeleny.  Burge's conduct amounted to concealment of material facts and usurpation
28 of partnership opportunity.

58.     Zeleny has been harmed by this breach of fiduciary duties in an amount to be proven at trial, including, without limitation, the loss of royalties in connection with the publication of the Collected Works.

59.     Burge's breaches of his fiduciary duties were willful, fraudulent, oppressive, and malicious, entitling Zeleny to punitive damages.

### THIRD CLAIM

### BREACH OF WRITTEN CONTRACT

### (By Zeleny Against Burge, MIT and MIT Press)

60.     Zeleny incorporates by reference each of the preceding paragraphs as though fully set forth herein.

61.     In the alternative to his claim of copyright infringement, Zeleny asserts this claim for breach of the 1996 Letter of Agreement between himself, Burge, Enderton, and MIT / MIT Press.

62.     To the extent valid and enforceable, the 1996 Letter of Agreement provides that MIT and MIT Press are obligated to pay Zeleny royalties on sales of the Collected Works.

63.     Zeleny performed all of his material obligations under that contract by preparing and delivering a version of the Collected Works, including the incorporated typescript code and bibliography.

64.     MIT, MIT Press, and Burge breached their obligations under the contract by failing to pay Zeleny any royalties for the publication and sale of the Collected Works.

65.     Zeleny has been harmed by these breaches of contract by failing to receive the royalties to which he is entitled.

### FOURTH CLAIM

### BREACH OF THE IMPLIED COVENANT

### (By Zeleny Against Burge, MIT and MIT Press)

66.     Zeleny incorporates by reference each of the preceding paragraphs

- 12 -

1  as though fully set forth herein.

2     67.   To the extent valid and enforceable, the 1996 Letter of

3  Agreement, as any written contract, contains an implied covenant requiring the

4  parties to behave reasonably and in good faith in their performance of the contract.

5  The implied covenant prohibits a party from doing anything that would unfairly

6  deprive the other party of the benefits of the bargain to which the parties agreed.

7     68.   Burge, MIT, and MIT Press breached the implied covenant by

8  circumventing Zeleny and entering into a subsequent agreement, purporting to

9  eliminate Zeleny's rights under the original contract.  This conduct was undertaken in

10  bad faith, knowing of Zeleny's rights, with the specific intention of depriving Zeleny

11  of the benefits of the bargain.

12     69.   Zeleny has been damaged by this bad faith conduct by failing to

13  receive the royalties that he should have received under the 1996 Letter of

14  Agreement.

15                        **FIFTH CLAIM**

16                  **BREACH OF CONTRACT**

17       **(By Zeleny Against Burge and the Church Project)**

18     70.   Zeleny incorporates by reference each of the preceding paragraphs

19  as though fully set forth herein.

20     71.   Burge and Zeleny had an oral and/or implied contract to share

21  equally in the royalties from the publication of the Collected Works through the

22  Church Project.  Burge expressly agreed to share in the royalties with Zeleny and to

23  give Zeleny attribution as an editor of the Collected Works.  This amounted to a valid

24  and binding contract among them.

25     72.   Zeleny satisfied all of his obligations under this contract by,

26  among other things, his immense work in collecting and compiling the Collected

27  Works, obtaining additional materials to be included in their publication, and

28  preparing and compiling a bibliography of the Collected Works, and creating the

associated typescript code.

73.     Burge and the Church Project breached the parties' contract by, among other things, publishing the Collected Works without Zeleny's knowledge or consent, and failing to share in any of the royalties.

74.     In addition, Zeleny is a third-party beneficiary of the purported 2008 Agreement between Burge, Enderton, and MIT / MIT Press.  He is expressly referred to therein.  The provisions for payment and attribution are expressly intended for his benefit.

75.     To the extent the 2008 Agreement is valid, Burge breached the 2008 Agreement by (a) failing to pay Zeleny any royalties from sales of the Collected Works as agreed in that agreement; and (b) failing to give proper attribution to Zeleny for his authorship of the Collected Works.

76.     Zeleny has been damaged by these breaches in an amount to be proven at trial, including, without limitation, the loss of royalties to which he is entitled.

## SIXTH CLAIM

### ACCOUNTING

**(By Zeleny Against Burge and the Church Project)**

77.     Zeleny incorporates by reference each of the preceding paragraphs as though fully set forth herein.

78.     The Church Project is a common law general partnership comprised of Zeleny and Burge as partners.

79.     As a partner of the Church Project, Burge has a duty to fully account for all profits and things received in connection with the partnership business, including all royalties and other benefits received through the publication of the Collected Works.

80.     Zeleny has demanded an accounting from Burge, but Burge has failed to provide the same.

81.    Accordingly, Zeleny is entitled to an equitable accounting of all profits, gains, and benefits obtained by Burge in connection with the Church Project and the publication of the Collected Works.

**PRAYER FOR RELIEF**

WHEREFORE, Zeleny prays for relief as follows:

1.    For a judgment that Defendants have infringed upon Zeleny's copyright in his contribution to the "Collected Works";

2.    That Zeleny be awarded his actual damages and/or Defendants' profits attributable to the infringement, in an amount to be proven at trial;

3.    That Defendants and their respective officers, directors, employees, agents, representatives, affiliates, subsidiaries, distributors, licensees, and all persons acting in concert or participation with them be enjoined from further infringement of Zeleny's copyrights;

5.    For punitive damages on account of Defendants' willful, malicious, oppressive, and fraudulent conduct.

6.    For damages against Burge and the Church Project on account of Burge's breaches of fiduciary duties and breach of contract, in an amount to be proven at trial;

7.    For an accounting of all amounts owed; and

8.    For such other and further relief as the Court deems just and proper.

Dated:  October 21, 2021                    Respectfully submitted,

By: s/ Damion Robinson
David W. Affeld
Damion D. D. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiff Michael Zeleny

- 15 -

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff demands a jury trial on all matters so triable.

3

Dated:  October 21, 2021                    Respectfully submitted,

4

By: s/ Damion Robinson

5

David W. Affeld
Damion D. D. Robinson
Affeld Grivakes LLP

6

7

Attorneys for Plaintiff Michael Zeleny

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

FIRST AMENDED COMPLAINT

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that I filed the foregoing document on the Court's CM/ECF electronic-filing system and am informed and believe that doing so will result in electronic service on counsel for to all parties.

Dated:  October 21, 2021

                                                 Damion D. D. Robinson

- 17 -

FIRST AMENDED COMPLAINT